OPINION
{¶ 1} Appellant, G.W., appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of his three children to appellee, Butler County Children Services Board (BCCSB).
 {¶ 2} Appellant is the biological father of three children. In 2001, before the complaint at issue in this case was filed, the children were adjudicated neglected and dependent. They were in the custody of BCCSB and placed in a foster home from October 2001 until June 2004.[1]
During that time, BCCSB filed a complaint for permanent custody due to lack of progress on the part of the parents. However, the complaint was withdrawn on February 19, 2004, due to the parents' eventual cooperation with BCCSB and completion of the case plan.
 {¶ 3} The children were reunified with their parents in June 2004 and in September 2004 BCSB closed its case on the family. Only a few weeks later, in October 2004, BCCSB received a new referral regarding the children. The referral alleged that appellant hit his oldest child with a stick and left a bruise on her hip. After investigation, BCCSB found the referral substantiated. On November 12, 2004, BCCSB received another referral alleging physical abuse of the same child. While investigating the referral, a BCCSB worker observed that the home was cluttered and unclean. Middletown police conducted an emergency removal of the children from the home. The children were placed in the care of the same foster family with whom they had previously been placed.
 {¶ 4} On December 14, 2004, BCCSB filed a complaint alleging abuse, neglect and dependency of the oldest child and alleging neglect and dependency of the other two children. The complaint included a request for permanent custody of the children. On October 25, 2005, the children were adjudicated dependent. Prior to a hearing on the permanent custody request, the children's mother died. A hearing on the request for permanent custody was held before a magistrate on March 27, 28, and 29,2006. At the time of the hearing, the children were ages 10, 9 and 6. The magistrate issued a decision granting permanent custody of the children to BCCSB on June 2, 2006. Appellant filed objections to the decision, which were overruled by the trial court on August 14, 2006.
 {¶ 5} Appellant now appeals the trial court's decision to grant permanent custody of the children to BCCSB, raising a single assignment of error for our review:
 {¶ 6} "THE TRIAL COURT'S FINDING THAT THE CHILDREN CANNOT BE PLACED WITH THEIR FATHER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santosky v.Kramer (1982), 455 U.S. 745, 759, 102 S.Ct. 1388. An appellate court's review of a juvenile court's decision finding clear and convincing evidence is limited to whether sufficient credible evidence exists to support the juvenile court's determination. In re Starkey,150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In reRodgers (2000), 138 Ohio App.3d 510, 520.
 {¶ 8} R.C. 2151.414(B) requires the juvenile court to apply a two-part test when terminating parental rights and awarding permanent custody to a children services agency. Specifically, the trial court must find that: 1 ) the grant of permanent custody to the agency is in the best interest of the children, utilizing, in part, the factors of R.C.2151.414(D); and, 2) any of the following apply: the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; the child is abandoned; the child is orphaned; or the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period.[2] R.C.2151.414(B)(1)(a), (b), (c) and (d); In re Schaefer, 11 Ohio St.3d 498,2006-Ohio-5513, ¶ 31-36; In re Ebenschweiger, Butler App. No. CA2003-04-080, 2003-Ohio-5990, ¶ 9.
 {¶ 9} The trial court made a finding that it was in the best interest of the children to grant permanent custody of the children to BCCSB. That finding has not been challenged on appeal. Instead, appellant argues only that the trial court's determination that the children could not and should not be placed with their father was against the manifest weight of the evidence.
 {¶ 10} After determining that it was in the children's best interest to grant permanent custody, the trial court began its analysis of the second part of the test by looking at R.C. 2151.414(B) (1 )(d), which, as stated above, involves a consideration of whether the child has been in the temporary custody of a children services agency for 12 or more months of a consecutive 22-month period. The court found that this factor applied and that the children had been in the custody of BCCBS for the required period of time. The court continued its analysis, finding that the children could not and should not be placed with the father within a reasonable time.
 {¶ 11} In this case, the court made two separate findings on the second prong of the two-part determination it must make in deciding a permanent custody motion. See Schaefer at ¶ 31-36;Ebenschweiger at ¶ 9. The court found both that the children had been in the temporary custody of BCCSB for more than 12 months of a continuous 22-month period and that the children could not be and should not be placed with their father within a reasonable amount of time.
 {¶ 12} The Ohio Supreme Court has held that when determining whether a child has been in the agency's custody for 12 of the previous 22 months, the relevant time period to consider is the 22 months prior to the date the permanent custody motion was filed. In re C.W. 104 Ohio St.3d, 163,2004-Ohio-6411, ¶ 26. In this case, the permanent custody motion was filed on December 14, 2004, so the relevant 22-month time period was from February 14, 2003 to December 14, 2004. As the children were in the temporary custody of BCCSB from before February 2003 until June 2004, they were in the temporary custody of the agency for more than 12 months of the relevant 22-month time period.
 {¶ 13} After the juvenile court determined that the children had been in the temporary custody of BCCSB for 12 months of a continuous 22-month period, it was unnecessary for the trial court to make a determination that the children could not or should not be placed with their father within a reasonable period of time. InreJ.J., Butler App. No. CA2005-12-525, ¶ 51.
 {¶ 14} Although the court was not required to make this determination, we note that there was clear and convincing evidence that supported the finding that the children could not and should not be placed with their father within a reasonable period of time.
 {¶ 15} R.C. 2151.414(E) provides a framework for determining whether a child cannot or should not be placed with either parent within a reasonable time. This provision first requires that in making this determination, "the court shall consider all relevant evidence." The statute continues by providing a list of 16 factors and a mandate that if one or more of those factors exist with respect to each of the parents, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]"
 {¶ 16} One of the factors a court must consider in determining whether a child cannot or should not be placed with either parent within a reasonable time is whether "[fallowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." R.C. 2151.414(E)(1).
 {¶ 17} Evidence was presented at the hearing that in the previous case, the children were removed from the home in October 2001 and the parents made very little progress on the case plan provided by the agency until a motion for permanent custody was filed in September 2004. The children were reunified with their parents for only a few weeks before the agency again began receiving referrals regarding the family. When a caseworker from the agency visited the home, she described the home as cluttered and filthy with dirty dishes and dirty clothes lying around and clutter blocking the walkways. The cleanliness of the home and children were an issue in the previous case, along with the issue of inappropriate physical discipline and domestic violence.
 {¶ 18} A case plan was formulated in the present case after the removal of the children. The case plan involved substance abuse assessment and treatment for the father, compliance with random drug screens, domestic violence treatment, maintaining a safe and sanitary home, and individual therapy. The trial court found that the agency made reasonable efforts to prevent the continued removal of the children from the home by providing diagnostic services, visitation, and referrals related to substance abuse and domestic violence services
 {¶ 19} Evidence was presented at the hearing that the father had not completed a substance abuse assessment. The father testified that he was scheduled to take the assessment on April 3, 2006. However, further questioning revealed that, although part of the case plan implemented shortly after the children were removed the second time, the father had waited until January 2006 to schedule the assessment. The caseworker testified that she attempted to help appellant schedule the assessment, but he told them he would do the assessment in Warren County where he was involved with children's services agency regarding two of his other children. However, he would not tell the BCCSB worker the agency's name and would not allow her to schedule the appointment for him. On cross-examination, he admitted that the caseworker had offered to make appointments for him, and that he went to the assessment center one morning, but the center only takes the first seven people and he didn't want to get up early the next morning to wait in line for the assessment. The caseworker also testified that random drug testing was ordered as part of the case plan, and appellant failed to comply with this requirement.
 {¶ 20} Other evidence was presented to show that little progress was made on keeping the home safe and sanitary. The caseworker testified that she visited the home in January 2006 and the home was still not safe or appropriate for children and there was no place for the children to sleep or live. She also testified than until recently, the father would sometimes arrive late for visits with the children or would not show up, although this had improved recently. The principal of the children's school testified that the children often had behavior problems after visits with their father and the problems usually involved the father being late or not showing up for visits. She testified that the children's behavior had improved during the first time they were with the foster family and when they returned to the school after being placed with the foster parents the second time; after being with their parents, their behavior had regressed and behavior problems started all over again.
 {¶ 21} In addition, a physician who is counseling the oldest two children testified that when the children were in foster care, they were clean and their hygiene was good. However, after being returned to their parents, he noticed a change in their hygiene, as the children were "quite dirty," along with having regressed and clingy behavior. The guardian ad litem's report indicated that the problem in this case was the father's failure to take action and progress and that he appears to be either not willing or not able to do what it takes to be reunified with his children.
 {¶ 22} Given the above evidence, we find no error in the trial court's determination that the children cannot and should not be placed with their father within a reasonable time. A parent's past history is one of the best predictors of future behavior. In re West, Athens App. No. 05CA4, 2005-Ohio-2977. Appellant failed to follow through on the case plan the first time his children were removed until a request for permanent custody was filed. In this case, despite reasonable efforts on the part of the agency by providing services and referrals, appellant has again shown very little desire or commitment to do whatever is necessary to reunify with his children by failing to remedy the problems that caused the removal.
 {¶ 23} Judgment affirmed.
POWELL, P.J., and BRESSLER, J., concur.
[1] It is unclear from the record of the case before us why BCCSB waited for such a long period before moving for permanent custody in the first case involving these children. Prior to enactments to the Revised Code, the statutes addressing the filing of a permanent custody motion by an agency were permissive, "setting forth only situations in which an agency could file for permanent custody." In re C.W. 104 Ohio St.3d 163,2004-Ohio-6411, ¶ 20. (Emphasis sic.) Under revisions to the statute, designed to combat the issue of "foster care drift," "an agencymust, except in limited circumstances, file for permanent custody once a child has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period." Id at ¶ 20.; In re K.G., Wayne App. Nos. 03CA0066, 03CA0067, 03CA0068, 2004-Ohio-1421; R.C. 2152.413(D)(1). The "12 of 22" provisions balance the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child. C.W. at ¶ 22; see, also, K.G. at ¶ 9. "Through the'12'of 22" provisions in the permanent-custody statutes, the legislature provides parents with 12 months to work toward reunification before an agency can institute a permanent-custody action asserting [the 12 of 22] grounds." C.W. at ¶ 22.
[2] R.C. 2151.414(B)(2) provides that the court is required to grant permanent custody if it makes a best interest determination and finds that the child cannot or should not be placed with either parent only in cases where the court has previously made a finding under R.C.2151.19(A)(2) that reasonable efforts are not required by the agency to prevent removal of the child from the home, eliminate the continued removal and return the child to the home, and a motion for permanent custody is filed pursuant to R.C. 2151.413(D)(2).