[Cite as *In re D.H.*, 2018-Ohio-630.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

IN THE MATTER OF: : **O P I N I O N**
D.H., E.S., AND A.S.,
NEGLECTED CHILDREN :

CASE NO. 2017-A-0081

Appeal from the Ashtabula County Court of Common Pleas, Juvenile Division, Case No. 2015 JC 00006.

Judgment: Affirmed.

*Margaret A. Draper*, Assistant Prosecutor, ACCSB, 3914 C Court, Ashtabula, OH 44004, *Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Appellee).

*April R. Grabman*, Law Offices of Michelle M. French, LLC, 28 West Jefferson Street, Jefferson, OH 44047 (For Appellant).

*Linda G. Silakoski*, 8 North State Street, Suite 400, Painesville, OH 44077 (Guardian ad litem).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Lisa Miller, appeals the termination of her parental rights and the grant of permanent custody of her three children, D.H., E.S., and A.S., to the Ashtabula County Children Services Board (the Agency), appellee. We affirm.

{¶2} David Hettmansperger fathered D.H, born in October of 2007, and Joseph Shaw fathered E.S., born in July of 2011, and A.S., born in October of 2012. Shaw and Hettmansperger do not appeal the termination of their parental rights. Miller also has two other teenager sons, in the custody and care of others at the time of the proceedings, and who are not in issue here.

{¶3} D.H., E.S., and A.S. were placed in the Agency's temporary custody in January of 2015 following reports of drug manufacturing and illegal drug use in Miller and Shaw's home. Miller had custody of all three children since their respective births. The complaint for temporary custody also alleged repeated neglect of the children, including the oldest child, D.H., being locked out of the home, and all three children having little to no food and poor supervision. It also detailed Miller's ongoing abuse of illegal drugs as an additional ground for removal.

{¶4} On April 10, 2015, the children were adjudicated dependent, as alleged under R.C. 2151.04(C). All three children were initially placed in a kinship home with Hettmansperger's first cousin. However, D.H. was subsequently removed from the home because he reportedly had inappropriate contact with the kinship parents' biological daughter. D.H. was placed in a structured, therapeutic foster care home, and E.S. and A.S. remained together in the Hettmansperger's cousin's home, with whom they are not related.

{¶5} In August of 2015, D.H.'s father, Hettmansperger, moved for legal custody of him.

{¶6} The children remained in the Agency's custody until it moved for permanent custody on August 16, 2016. It provided three alternative reasons

2

supporting its motion.  As cause, the Agency asserted that the children have been in its custody for 12 or more months of a consecutive 22-month period; that the children cannot and should not be placed with any of their parents in a reasonable time; and that Miller, Shaw, and Hettmansperger have continually failed to correct the conditions causing the children to be placed in the Agency's care.

{¶7}    The combined hearing addressing Hettmansperger's motion for custody and the Agency's motion for permanent custody was held November 28, 2016.

{¶8}    The guardian ad litem recommended, in her testimony and reports, awarding permanent custody of all three children to the Agency.

{¶9}    The magistrate issued her decision in December of 2016, and Miller and Hettmansperger filed objections.  On October 26, 2017, the trial court overruled their objections and adopted the magistrate's decision permanently terminating Miller's, Shaw's, and Hettmansperger's parental rights regarding their respective children, and granted the Agency's motion for permanent custody.

{¶10}  Miller raises one assignment of error:

{¶11}  "THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR PERMANENT CUSTODY AS SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶12}  Her assigned error raises four subarguments.  Miller first argues that the Agency failed to present clear and convincing evidence that she would not be able to parent her children within a reasonable time.  Second, Miller claims that the Agency did not establish that she failed to substantially remedy the conditions initially causing the children to be removed from her custody and her lack of commitment to the children.

3

Third, Miller asserts the Agency failed to use reasonable efforts in assisting her to remedy the issues causing the children's removal. Finally, she claims the court's finding that it was in the children's best interest to be placed in the permanent custody of the agency was erroneous

{¶13} A parent's right to raise a child is a basic civil right. *In re Phillips,* 11th Dist. Ashtabula No. 2005-A-0020, 2005-Ohio-3774, ¶22, citing *In re Hayes,* 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). "The parent's rights, however, are not absolute. Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" *In re Cunningham* (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (quoting *In re R.J.C.* (Fla.App.1974), 300 So.2d 54, 58)." *In re West,* 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, ¶31.

{¶14} Pursuant to R.C. 2151.414(B)(1), a court may grant permanent custody of a child to the state agency if it finds by clear and convincing evidence that it is in the child's best interests and one or more of the factors in R.C. 2151.414(B)(1)(a)-(e) applies. One of these factors is whether the child or children have been in the temporary custody of one or more public children services agencies for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d).

{¶15} "'Clear and convincing evidence is more than a mere preponderance of the evidence; instead, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.' *In re Aiken,* 11th Dist. Lake No. 2005-L-094, 2005-Ohio-6146, ¶ 28." *In re M.G.*, 11th Dist. Geauga No. 2013-G-3162, 2014-Ohio-974, ¶12.

4

{¶16} In its 27-page decision, the court found that the children had been in the custody of the state for more than 12 months during a consecutive 22-month period. It also found that Miller had failed to substantially remedy the issues causing the children to be initially removed from her home and that it was in the best interest of the children to grant custody to the Agency.

{¶17} We review the trial court's termination of an individual's parental rights pursuant to the civil manifest weight of the evidence standard. *In re J.H.,* 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶91; *In re B.R.C.,* 11th Dist. Portage Nos. 2013-P-0059 and 2013-P-0060, 2014-Ohio-69, ¶41. "When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court '"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Eastley [v. Volkman,* 132 Ohio St.3d 328] at ¶20; quoting *Tewarson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001)." *In re D.M.,* 4th Dist. Hocking No. 15CA22, 2016-Ohio-1450, ¶11.

{¶18} "Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact." *In re West,* 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, ¶37.

{¶19} R.C. 2151.414(B)(1) states in part:

{¶20} "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held

5

pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

**{¶21}** "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

**{¶22}** "(b) The child is abandoned.

**{¶23}** "* * *

**{¶24}** "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶25}** "* * *

6

{¶26} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."

{¶27} The Agency moved for permanent custody and as grounds alleged, under the 12 out of the 22-month prong in R.C. 2151.414(B)(1)(d), that the children had been in its custody for more than the past 12 months of a consecutive 22-month period.

{¶28} Alternatively, the Agency also alleged that the children cannot and should not be placed with any of their parents within a reasonable time under R.C. 2151.414(E). Consistent with this theory, it also alleged that the mother and fathers failed to repeatedly remedy the issues causing the children to be placed in custody. The Agency proceeded on these alternative theories in their motion for permanent custody and at the hearing, and the trial court agreed and made findings supporting both.

{¶29} Upon finding that the grant of permanent custody to the Agency was in the best interest of the children, however, the trial court only had to find one of the four alternatives applicable by clear and convincing evidence. R.C. 2151.414(B)(1). Thus, regardless of the alternative theories presented and the additional findings made by the trial court, we need only address and affirm one basis supporting the trial court's decision. *In re Brown*, 7th Dist. Columbiana No. 04 CO 59, 2005-Ohio-4374, ¶49, citing *In re Hardy*, 7th Dist. No. 04MA11, 2004-Ohio-4542, ¶21 (finding no need to delve into alternative grounds for permanently terminating parental rights).

7

**{¶30}** Here, the trial court found R.C. 2151.414(B)(1)(d) was established by the clear and convincing evidence produced at the hearing. We agree.

**{¶31}** Miller confirmed during her testimony that D.H., E.S., and A.S. were taken into emergency temporary custody on January 27, 2015, and that up to the date of the permanent custody motion, i.e. August 16, 2016, and thereafter, all three children remained in the Agency's custody. Pursuant to R.C. 2151.414(B)(1), a child is considered to have entered the custody of an agency for assessing the 12 out of the 22-month provision, on the earlier date of his or her shelter care adjudication or 60 days after the removal from the home. Thus, between March 28, 2015 and the date of the Agency's motion, August 16, 2016, more than 19 months passed. Thus, the Agency established that all three children were in its custody for 12 of the 22 months prior to the Agency's motion for permanent custody. Miller does not dispute this finding, but instead challenges the trial court's alternative findings.

**{¶32}** Because R.C. 2151.414(B)(1)(d) is satisfied, we need not discuss Miller's first three subarguments, which arise from the trial court's alternative basis for terminating her parental rights and its findings that the children cannot and should not be placed with their parents within a reasonable time under R.C. 2151.414(E). *In re Brown, supra.*

**{¶33}** Miller's fourth and final subargument under her sole assigned error disagrees with the trial court's decision finding it was in the children's best interest to be placed in the permanent custody of the Agency.

**{¶34}** The best interest of the children analysis is governed by R.C. 2151.414(D), which states:

**{¶35}** "(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

**{¶36}** "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

**{¶37}** "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

**{¶38}** "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

**{¶39}** "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

**{¶40}** "(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶41} As of the date of the permanent custody hearing, both Miller and Shaw were incarcerated. Shaw failed to appear at the hearing, and did not notify his counsel of his desire or need for transportation to attend and participate in the hearing. The court ultimately found that Shaw abandoned E.S. and A.S. based on his failure to visit or contact them for 90 days.

{¶42} Miller was present at the hearing and testified that she regularly visited D.H., E.S., and A.S. during the time the Agency had temporary custody of them until the date she was incarcerated.

{¶43} Miller acknowledged her long history of drug addiction and confirmed that she made several unsuccessful attempts to complete her case plan requirements regarding her drug abuse. She entered, but did not complete, several intensive outpatient treatment programs. Miller refused to voluntarily enter an inpatient treatment program even though her children were in custody of the Agency.

{¶44} Miller was incarcerated as a result of her two convictions for unlawful sexual conduct with a minor. As part of her sentence, she agreed to complete the jail drug treatment program. Her sentencing entry suspends her 30-month prison term upon her successful completion of the jail drug treatment program. Miller believes that she will complete the treatment program between 90-125 days after it begins, but that it had not yet started. As a result of her convictions, Miller has to register as a tier II sex offender for 25 years.

{¶45} Miller also confirmed that she lacked stable housing. She had four different residences during the Agency's custody of her children before she was incarcerated. Miller asked the court to allow the Agency to continue its temporary

10

custody of the children until her release from prison. Although she knew she was unable to care for her children now, she believed she would be capable upon her release.

{¶46} Miller has not had a job since the children were placed with the Agency. She explained that she has anxiety and a bad heart that prevents her from working. She sought, but was denied disability benefits. She survived on food stamps before her incarceration.

{¶47} Miller explained that she was lining up an apartment for her and the children to live in upon her release from jail, but she admitted that she had not yet informed the owner of her sex offender status.

{¶48} As part of her case plan requirements, Miller was required to undergo mental health counseling, and she agreed that she did not attend all of the required counseling. Miller did complete the requisite parenting class consistent with her case plan.

{¶49} It is undisputed that Miller loves her children and that she interacted lovingly with them during their visits. However, the family's case worker, Kathy Kasputis, testified that the Agency considered shortening Miller's visits with the children because the children demonstrated behavior problems during their two-hour visits with their mother.

{¶50} Kasputis explained that the three children were originally placed together in the kinship home, but that D.H. had to be removed due to behavioral issues after a few weeks. The younger brothers remained with the same family, who also have an older biological daughter.

{¶51} Kasputis explained that she visits the children monthly and that A.S. and E.S. are being well taken care of and thriving. The boys initially over ate and hoarded food, but she believes this issue is resolved.

{¶52} Kasputis confirmed that no other family member came forward to take care of the children. She felt A.S. and E.S. were well bonded with their placement parents and their older sister was very nurturing toward them. The boys got along and enjoyed seeing one another when they visited with D.H.

{¶53} She also explained that although D.H. was still having issues, he is adoptable and needs a secure home. Kasputis agreed that if A.S. and E.S. were adopted by their placement family, there was no way to require the family to maintain their relationship with their older brother, D.H.

{¶54} The placement "mother" of A.S. and E.S. also testified. She has had A.S. and E.S. since they were approximately two and half and three and half years old. When they first moved in with her, she recalls they were hungry, skinny, and quiet, explaining, "[t]hey didn't talk, they didn't cry. * * * They ate a lot. They would scream for food. They'd hide food, [and] take food." She also explained that before they were toilet trained, one of the boys would go to the bathroom around her home and eat his own feces.

{¶55} Both A.S. and E.S. now call her mom and her husband dad. She wants to adopt both. She continues to take care of their needs, including speech and occupational therapy, and she explained they no longer need therapy for emotional and social issues.

{¶56} Miller argues in part that granting custody of D.H. to the Agency was improper because Hettmansperger was willing and able to take him, and that he even moved for custody of D.H.

{¶57} However, and for purposes of this appeal only, the evidence at the hearing likewise confirmed that a grant of D.H.'s custody to the Agency, and not to Hettmansperger, was in his best interest.

{¶58} Hettmansperger testified that he wants custody of D.H., but acknowledged only visiting him about six times during the almost two years D.H. has been in the Agency's custody. Hettmansperger never had custody of D.H. and explained that his full-time and part-time jobs prevented him from visiting D.H. more. Hettmansperger also felt that the Agency failed to sufficiently notify him in advance of his monthly visits.

{¶59} Before the children were removed from Miller and Shaw's home, Hettmansperger lived nearby and would periodically feed D.H. when he came looking for food, but Hettmansperger never sought custody of him before the Agency became involved with the family.

{¶60} Hettmansperger did not comply with the guardian ad litem's request to schedule a visit with D.H. so she could observe their interactions.

{¶61} None of the children were deemed old enough to give their opinion as to with whom they wished to live.

{¶62} Hettmansperger testified that he has nine children, and that three minor children currently live with him and his wife and one of the minor girls was pregnant at the time of the hearing. His oldest son, who is over 18 years old, lives with him as needed, but is now in the Lake County jail for a probation violation. Hettmansperger

has a domestic violence conviction from an incident with his wife, which he explained was just an argument.

**{¶63}** The guardian ad litem's report regarding D.H. emphasizes his need for permanency. She emphasizes that Hettmansperger had made very limited efforts to visit and bond with D.H. and that Hettmansperger demonstrated a lack of commitment to D.H's best interests and special needs.

**{¶64}** The GAL likewise found that D.H. made many improvements in his foster home and school, but that he will continue to need therapy and intervention for his PTSD and ADHD.

**{¶65}** With regard to A.S. and E.S., the GAL also emphasized the need for continued permanency, which they had for almost two years with their placement family at the time of the hearing. The GAL notes that their adoption and secure placement cannot continue without a grant of permanent custody to the Agency. With regard to all three boys, she concludes that "[p]ermanent custody is the only hope these boys have of finding a permanent, stable and safe environment where they can continue to grow and thrive."

**{¶66}** Upon weighing the evidence and all reasonable inferences, we do not find that the trial court lost its way and created a manifest miscarriage of justice warranting reversal. Consistent with R.C. 2151.414(D), we agree with the trial court's decision that granting permanent custody of D.H., E.S., and A.S to the Agency is in their best interest. Accordingly, Miller's final argument under her sole assigned error lacks merit and is overruled.

**{¶67}** The trial court's decision is affirmed.

14

DIANE V. GRENDELL, J.,

TIMOTHY P. CANNON, J.,

concur.