OPINION
{¶ 1} Appellant, Joseph Aiken, appeals from the June 6, 2005 judgment entry of the Lake County Court of Common Pleas, Juvenile Division, granting permanent custody of his son, Noah Abraham Aiken ("the minor child"), to appellee, Lake County Department of Job and Family Services.
 {¶ 2} On June 18, 2003, appellee filed a complaint alleging that the minor child, d.o.b. June 16, 2003, appeared to be an abused child pursuant to R.C. 2151.031.[1] Appellee also filed a motion for emergency temporary custody on June 18, 2003, and a hearing was held on June 19, 2003. Pursuant to its June 19, 2003 judgment entry, the trial court granted emergency temporary custody of the minor child to appellee.
 {¶ 3} A case plan was filed on July 28, 2003. On September 11, 2003, an adjudicatory hearing was held in which appellant and Cole-Aiken stipulated that the minor child was an abused child. Pursuant to its September 11, 2003 judgment entry, the trial court found that the minor child was an abused child based on R.C. 2151.031, ordered him to remain in the temporary custody of appellee, and adopted the July 28, 2003 case plan.
 {¶ 4} An amended case plan was filed on December 18, 2003. Review hearings were held on March 11, 2004, and April 28, 2004, in which the magistrate determined that the parties had not complied with the amended case plan. A second amended case plan was filed on June 11, 2004.[2]
 {¶ 5} On August 10, 2004, appellee filed a motion for permanent custody.
 {¶ 6} On November 16, 2004, the guardian ad litem, Amy Marie Freeman ("GAL"), filed her report in which she recommended that appellee be granted permanent custody of the minor child.
 {¶ 7} A five day permanent custody hearing commenced on November 17, 2004, and was completed on April 7, 2005. At that hearing, Dr. Laura Garlisi ("Dr. Garlisi"), appellant's psychiatrist, testified for appellee that she first saw appellant on August 23, 2001. Based on her assessment, appellant had an adjustment disorder, with depressed and anxious moods, and was diagnosed with polysubstance dependence, and personality disorder, which included antisocial and borderline traits. In May 2002, he was diagnosed with cocaine dependence, alcohol and marijuana abuse, and antisocial personality disorder. Dr. Garlisi's last session with appellant was on January 12, 2004. Because of appellant's problem with impulsivity, aggression, and substance abuse, she was concerned that he would strike the minor child. Dr. Garlisi indicated that even if she had learned that appellant was living a clean and sober life, that would not alleviate her concerns about appellant's past history regarding his ability to care for the minor child, because the best predictor of future aggression is past aggression.
 {¶ 8} Thomas Coss ("Coss"), a clinical social worker with the Department of Veteran Affairs, testified for appellee that he first met with appellant in 2002, to discuss his income, health, and substance abuse problems. Appellant tested positive for opiates, cocaine, amphetamines, and cannabis. Although appellant was put into programs on three occasions, Coss indicated that he withdrew from treatment each time. Coss opined that appellant's recovery might be detracted if he were to have the minor child in his custody.
 {¶ 9} Rocky Carroscia ("Carroscia"), an early interventionist specialist at Broadmoor School, testified for appellee that he met with the minor child on September 24, 2003. After conducting a full assessment, it was determined that the minor child had some mild tremors due to his drug exposure, and, thus, underwent therapy. Neither appellant nor Cole-Aiken attended the initial appointment, but went to class on three out of a total of fourteen occasions. Carroscia stated that the minor child's foster mother brought him to class faithfully. Carroscia said that part of the class consisted of educating parents how to help their children develop. Carroscia indicated that the minor child would "light up" when he would look at his foster parents, but only had a "flat" look when he would look at appellant.
 {¶ 10} According to Donna Scott ("Scott"), an employee of Crossroads Early Childhood Services, who testified for appellee, she first visited with the minor child in September 2003. Scott said that appellant attended some parenting sessions, but that there was a fifty-day period where he did not participate at all. Around April 2004, Scott stated that appellant indicated to her that he had been in and out of all of these services, did what he was going to do, and was "done." She maintained that home visits were scheduled with appellant and Cole-Aiken, however, they were not at home during those times. With respect to signs of domestic violence, Scott saw a bruise on Cole-Aiken's face. Scott stated that she would be concerned if appellant had unsupervised visits with the minor child. According to Scott, the development and relationship between the minor child and appellant had been impacted due to appellant's lack of consistency.
 {¶ 11} Richard Naylor ("Naylor"), a drug and alcohol counselor with the LakeG-eauga Center for Drug and Alcohol Abuse, testified for appellee that he first met with appellant in December 2003. According to Naylor, appellant struggled with drug and alcohol problems for numerous years. Based on his assessment, Naylor recommended that appellant attend the intensive out-patient program. However, appellant failed to comply.
 {¶ 12} Nick Cindric ("Cindric"), chief probation officer for Painesville Municipal Court, testified for appellee that he became involved with appellant when he was on probation for operating a vehicle while intoxicated, driving without a license, and attempted trafficking. Cindric indicated that appellant had a probation violation warrant issued for noncompliance because drug and alcohol treatment was not completed.
 {¶ 13} Jamie Werner ("Werner"), a social worker with appellee, testified for appellee that at the time of the hearing, appellant and Cole-Aiken had not fully complied with the case plan. Before the permanent custody motion was filed, neither parent had completed a drug and alcohol assessment or treatment, and were inconsistent with visiting the minor child and with working on parenting skills. Werner indicated that both parents admitted to her that they were cocaine users but refused drug screenings. With respect to visitations, Werner observed that both the minor child and appellant appeared to be anxious, the minor child would cry, and would immediately want to exit the room after the visits.
 {¶ 14} Around March 2004, Werner asked both parents if they were serious about getting the minor child back and if they had thought about him before they used drugs. She said that both parents looked at her and replied that they decided to "fuck it" and that's why they used drugs. In April 2004, appellant told Werner that he was no longer going to comply with a drug and alcohol assessment or treatment because he was "programmed out." Werner reminded appellant that if he failed to comply, a consequence could include termination of his parental rights. She stated that appellant maintained that he was aware of that consequence but was still not going to comply. Werner testified that Cole-Aiken stated that appellant had been physically, emotionally, and verbally abusive toward her. Werner indicated that Cole-Aiken was concerned for the minor child's safety regarding appellant, due to his temperament and violent history. On cross-examination, Werner said that appellant had recently followed the case plan.
 {¶ 15} Officer Michael Rebenock ("Officer Rebenock"), a police officer with the Fairport Harbor Police Department, testified for appellee that he came into contact with appellant on April 10, 2004. Officer Rebenock was dispatched to 440 New Street, where he observed appellant lying on a public sidewalk surrounded in vomit. He indicated that appellant was intoxicated and that his pants, which were unzipped, were wet. Appellant was issued a minor misdemeanor citation for disorderly conduct.
 {¶ 16} Deputy John Kelley ("Deputy Kelley"), with the Lake County Sheriff's Office, testified for appellee that he came into contact with appellant on May 13, 2004, at approximately 4:15 a.m. Deputy Kelley witnessed appellant's vehicle weave within its lane of traffic very badly and saw him throw a beer can out the window. Deputy Kelley initiated a traffic stop, approached appellant's vehicle, and appellant immediately stated that he was guilty. Appellant refused to take any field sobriety tests, and was arrested for DUI and driving with a suspended driver's license. At the police station, appellant was given a breathalyzer test, which revealed that his breath contained 0.178 grams of alcohol.
 {¶ 17} According to appellant, he was released from prison in July 2003, about a month after the minor child was born. Appellant tried his best to comply with the case plan but his "heart wasn't in it[.]" Appellant testified that he always had a place to live, attended six Alcoholics Anonymous meetings in April and May of 2004, and later got involved with the Road to Recovery program, Victory for Veterans, and Bible study.
 {¶ 18} On cross-examination, appellant indicated that he was in prison from 1974 to 1978 for manslaughter, and in the early 1980s, was incarcerated for six months for misdemeanor assault. Appellant stated that he had problems with drugs and alcohol for approximately thirty years. Appellant maintained that he completed a treatment program in 1993, after being released from prison for attempted burglary. He testified that he started a ministry while in prison for grand theft in 1997. Appellant said that he has everyday living stresses like when "[t]he mailman don't come on time, [he] get[s] a little teed[.]"
 {¶ 19} According to the GAL, she testified that based on her investigation, it would be in the best interest of the minor child for the trial court to grant permanent custody to appellee.
 {¶ 20} Pursuant to its June 6, 2005 judgment entry, the trial court granted appellee's motion for permanent custody of the minor child. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignment of error:[3]
 {¶ 21} "The trial court erred in granting the motion for permanent custody as the court's findings are not supported by clear and convincing evidence."
 {¶ 22} In his sole assignment of error, appellant argues that the trial court erred in granting appellee's motion for permanent custody because its findings are not supported by clear and convincing evidence. Appellant stresses that because he is case plan compliant, termination of his parental rights is not in the minor child's best interest.
 {¶ 23} R.C. 2151.414 sets forth guidelines which a juvenile court must follow. Specifically, R.C. 2151.414(B)(1) establishes a two-pronged analysis and permits the juvenile court to grant permanent custody of the child to the agency if the court determines by clear and convincing evidence that it is in the best interest of the child to grant permanent custody to the agency and that any of the following apply:
 {¶ 24} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 25} "(b) The child is abandoned.
 {¶ 26} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 27} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 28} The trial court may terminate the rights of a natural parent and grant custody of the child to the moving party only if it finds by clear and convincing evidence that one of the four factors in R.C.2151.414(B)(1) applies and that it is not in the best interest of the child to be placed with the natural parent. Clear and convincing evidence is more than a mere preponderance of evidence; instead, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, 368; Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 29} Here, pursuant to its June 6, 2005 judgment entry, the trial court indicated that: "[t]emporary custody of [the minor child] was granted to [appellee] on June 19, 2003 and he has remained continuously in [appellee's] custody from that date to the present, a period of twenty-three months. [The minor child] had been in [appellee's custody] for thirteen (13) consecutive months at the time the [m]otion for [p]ermanent [c]ustody was filed." R.C. 2151.414(B)(1)(a) and (d).
 {¶ 30} Next, the trial court proceeded to the second prong of the statutory analysis, to wit: the determination that it is in the best interest of the minor child to grant permanent custody to appellee. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates that the trial court must consider all relevant factors, including, but not limited to, the following:
 {¶ 31} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 32} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 33} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 34} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 35} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 36} We have consistently held "that the provisions of R.C.2151.414(D) are mandatory and `must be scrupulously observed.'" In reKelley, 11th Dist. No. 2002-A-0088, 2003-Ohio-194, at ¶ 24, quoting Inre Hommes (Dec. 6, 1996), 11th Dist. No. 96-A-0017, 1996 Ohio App. LEXIS 5515, at 1. The failure to discuss each of the R.C. 2151.414(D) factors when reaching a determination concerning the best interest of the child constitutes prejudicial error. Kelley, supra, at ¶ 25, citing In reJacobs (Aug. 25, 2000), 11th Dist. No. 99-G-2231, 2000 Ohio App. LEXIS 3859, at 5.
 {¶ 37} It is axiomatic that both the best interest determination and the decision that the child cannot be placed with either parent focus on the child, not the parent. Miller v. Miller (1988), 37 Ohio St.3d 71, 75. A trial court cannot consider the effect that granting permanent custody will have on the parent of the child. R.C. 2151.414(C). In reviewing a trial court's determination, an appellate court may not reverse the decision unless there is a showing of an abuse of discretion. Miller,
supra, at 74. An abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. An appellate court must consider that "`[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.'" Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124. Thus, the lower court is in the best position to weigh the evidence and assess the credibility of the witnesses. Holcomb, supra, at 367.
 {¶ 38} In the case at bar, the trial court's judgment entry states that the factors contained in R.C. 2151.414(D) were considered, and that the best interests of the minor child would be served by a grant of permanent custody to appellee. Specifically, the trial court addressed and discussed the following factors:
 {¶ 39} Pursuant to R.C. 2151.414(D)(1), the trial court stated that "there does not appear to be significant bonding and little emotional attachment [between appellant and the minor child.] He has had no contact with his half-siblings and very limited contact with his maternal grandparents. [The minor child] has closely bonded with his foster parents."
 {¶ 40} With regard to R.C. 2151.414(D)(2), the trial court's judgment entry reflects the wishes of the minor child through the GAL. The trial court stated that "[the minor child] is not quite two years old and cannot verbalize his wishes, nor can he understand the nature of the issues being considered." Thus, the trial court referenced the GAL's report, which in speaking for the minor child, indicated that he is too young to express his wishes, though he is happy in the foster home, and recommended that permanent custody be granted to appellee.
 {¶ 41} With respect to R.C. 2151.414(D)(3), the trial court's judgment entry discusses the custodial history of the minor child. The trial court indicated that "[o]n June 19, 2003, temporary custody of [the minor child] was granted to [appellee] and he was placed with his current foster parents on the same day. He has remained in the continued custody of [appellee] and has resided with the same foster parents since that date, a period of more then twelve (12) consecutive months."
 {¶ 42} Pursuant to R.C. 2151.414(D)(4), the trial court stated in its judgment entry that "[the minor child] very much needs a secure, permanent, stable home, and such a home cannot presently, or in the foreseeable future, be provided without a grant of permanent custody to [appellee]."
 {¶ 43} Regarding R.C. 2151.414(D)(5), the trial court's judgment entry reflects that appellant was incarcerated numerous times for domestic violence and DUI, and was incarcerated at the time of the minor child's birth.
 {¶ 44} Here, the trial court complied with the R.C. 2151.414
guidelines. The testimony at the permanent custody hearing supports the trial court's determination that it is in the best interest of the minor child to be permanently placed in the custody of appellee. As such, the trial court's decision is supported by clear and convincing evidence.
 {¶ 45} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.
Grendell, J., Rice, J., concur.
[1] The minor child tested positive for cocaine at birth. The minor child's natural mother, Julie Cole-Aiken ("Cole-Aiken"), admitted that she used cocaine during her pregnancy, up until two days before delivery. In addition, appellant was incarcerated for felony domestic violence, which involved his live-in girlfriend, when the minor child was born.
[2] Third and fourth amended case plans were filed on December 13, 2004, and on June 8, 2005.
[3] Cole-Aiken is not a party to the instant appeal.