[Cite as *In re M.G.*, 2014-Ohio-975.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: M.G. AND B.G., DEPENDENT CHILDREN. | : | **O P I N I O N** |
| | : | **CASE NO. 2013-G-3165** |

Civil Appeal from the Geauga County Court of Common Pleas, Juvenile Division. Case No. 11 JF 000046.

Judgment: Affirmed.

*Brendan J. Kohrs*, 421 Graham Road, Suite F, Cuyahoga Falls, OH 44221 (For Appellant Daniel Grover).

*James R. Flaiz*, Geauga County Prosecutor, and *Craig A. Swenson*, Assistant Prosecutor, Courthouse Annex, 231 Main Street, Chardon, OH 44024 (For Appellee Geauga County Job and Family Services).

*Sarah L. Heffter*, 401 South Street, Suite 2-B, Chardon, OH 44024 (Guardian ad litem).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Daniel Grover, appeals the judgment of the Geauga County Court of Common Pleas, Juvenile Division, terminating his parental rights concerning his sons, M.G. and B.G. Upon review of the record, the trial court's conclusions concerning the best interest of the minor children are supported by competent, credible evidence and, where required, are sufficient to support those findings by clear and convincing evidence. Accordingly, we must affirm the judgment.

{¶2}　The Geauga County Department of Job and Family Services ("GCJFS") filed a complaint on January 24, 2011, seeking temporary custody of appellant's two children, M.G. and B.G., born January 21, 2011.　The complaint was based on allegations that the children's mother suffered from schizophrenia and that she was unable to serve as a suitable parent of the twins.　The twins remained in their parents' custody, under court supervision, until the trial court granted GCJFS' motion for emergency custody in July 2011.　Initially, the mother had to be supervised while caring for the twins, primarily by appellant.　When appellant left the home, B.G. and M.G. were removed and placed in temporary custody of GCJFS on July 14, 2011.

{¶3}　GCJFS implemented a case plan with the goal of reunification.　GCJFS first filed a motion for permanent custody on September 16, 2011.　After hearings, the trial court denied the motion.　GCJFS filed a second motion for permanent custody on August 13, 2012.　Again, after a hearing, the trial court denied the motion for permanent custody.　In doing so, the trial court issued "protective orders" for appellant, as follows:

> The Court further orders that mother shall be required to have supervision or childcare assistance when alone with the children until further order of the Court.　Father shall be required to provide such supervision and/or assistance to mother and father is hereby ordered not to permit the children to be alone with mother without such supervision or assistance unless otherwise ordered in writing by the Court.　If father or mother physically separate, father shall be responsible for maintaining the safety and security of the children.

{¶4}　On January 24, 2013, GCJFS filed a third motion for permanent custody. In that motion, GCJFS noted that its temporary custody of the twins would typically terminate effective January 24, 2013, because that "would be two years from the date the complaint was filed in this case."　GCJFS also stated it was seeking permanent custody of the twins because the concerns that led to their removal from their parents'

2

custody still remain. On September 25, 2013, following a hearing, the trial court granted GCJFS' motion for permanent custody.

{¶5} Appellant filed a timely notice of appeal.

{¶6} Appellant's first assignment of error states:

{¶7} "The trial court failed to sign the Nunc Pro Tunc Judgment Entry dated September 25, 2013, as required by Civil Rule 58(A)."

{¶8} Appellant argues the trial court failed to sign the judgment entry dated September 25, 2013, as required by Civ.R. 58(A). A review of such judgment entry indicates that it is, in fact, signed by the trial court. Consequently, appellant's first assignment of error is without merit.

{¶9} As his second assignment of error, appellant maintains:

{¶10} "The Trial Court erred in finding that a grant of permanent custody was in the best interest of M.G. and B.G. and was not supported by Clear and Convincing Evidence as against the manifest weight of the evidence."

{¶11} We recognize that the termination of parental rights is "the family law equivalent of the death penalty." *In re Phillips*, 11th Dist. No. 2005-A-0020, 2005-Ohio-3774, ¶22, citing *In re Hoffman*, 97 Ohio St.3d 92, 95 (2002). This court has stated that a parent is entitled to "fundamentally fair procedures in accordance with the due process provisions under the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution." *In re Sheffey*, 167 Ohio App.3d 141, 147 (11th Dist.2006).

{¶12} R.C. 2151.414 provides the two-pronged analysis a trial court must follow in permanent custody proceedings. Pursuant to R.C. 2151.414(B)(1), a trial court may

3

grant permanent custody if the court determines at the permanent custody hearing—by clear and convincing evidence—that it is in the best interest of the child to grant permanent custody to the agency and that any of the following apply:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶13} Appellant does not dispute the applicability of subsection (d) in this case: both M.G. and B.G have been in the temporary custody of GCDJFS for at least 12 months of a consecutive 22-month period. In fact, the record indicates that M.G. and B.G. had been in the custody of GCDJFS for over 18 months at the time GCJFS filed its third motion for permanent custody.

4

**{¶14}** Having determined that one of the four factors in R.C. 2151.414(B)(1)(a)-(d) apply, the trial court must next decide, by clear and convincing evidence, whether the award of permanent custody to an agency is in the child's best interest based upon a non-exclusive list of relevant factors set forth in R.C. 2151.414(D)(1):

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶15}** "Clear and convincing evidence is more than a mere preponderance of the evidence; instead, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Aiken*, 11th Dist. Lake No. 2005-L-094, 2005-Ohio-6146, ¶28.

**{¶16}** In addition, R.C. 2151.414(D)(2) states, "[i]f all of the following apply, permanent custody is in the best interest of the child and the court shall commit the

5

child to the permanent custody of a public children services agency or private child placing agency:

> (a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.
>
> (b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.
>
> (c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.
>
> (d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

{¶17} In its judgment entry, the trial court examined both of the aforementioned "best interest" prongs—R.C. 2151.414(D)(1) and R.C. 2151.414(D)(2). The civil manifest weight of the evidence standard is applied to appellate review of cases involving the termination of parental rights: "if the trial court's grant of permanent custody to the county is supported by some competent, credible evidence, we must affirm the court's decision." *In re J.H.*, 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶91. However this must be stated in relation to the trial court's standard, as we must determine if there is competent, credible evidence in the record that would allow the trial court to have made its determinations by clear and convincing evidence.

> {¶18} '[I]nherent within R.C. 2151.414(B)(1)(d) rests the finding that the parent is unable, unsuitable, or unfit to care for the child. If the child has been placed in a children services agency's temporary custody for at least twelve months of the prior twenty-two months, some reason must exist why the child has not been in the parent's care. The reason normally would be because the parent has been

6

> unable to demonstrate that the parent is able, suitable, or fit to care
> for the child.'

*In re A.J. and S.M.*, 11th Dist. Trumbull No. 2010-T-0041, 2010-Ohio-4553, ¶42, quoting

*In re Workman*, 4th Dist. Vinton No. 02CA574, 2003-Ohio-2220, ¶39.  In effect, if a

parent has failed to achieve reunification within 12 months of a 22 month period, a

justifiable presumption of parental unfitness arises.  *See In re A.J. and S.M.* at ¶43.  In

its entry, the trial court found that appellant had not rebutted the presumption of parental

unfitness.

{¶19}  On appeal, appellant argues the trial court's granting of GCJFS's motion

for permanent custody decision was based upon insufficient evidence.  In his appellate

brief, appellant frequently cites to testimony that occurred at the hearings relating to

GCJFS's two previous motions for permanent custody, which were denied by the trial

court.  The order that is the subject of the instant appeal, however, addresses only the

testimony and evidence presented at the hearing on the third motion for permanent

custody.  The evidence and testimony from the two prior hearings is relevant only with

respect to whether the circumstances have or have not changed from the time those

hearings occurred.

{¶20}  At the hearing on the third motion for permanent custody, the trial court

heard testimony from Michelle Warren, a GCJFS social worker; Jennifer Moore-

Mallinos, an early childhood mental health consultant with Catholic Charities; Darlene

Grover, appellant's mother; Susan Whittaker, a psychiatric nurse practitioner with

Beacon Health; Steve Roos, a therapist with Beacon Health; Dr. Nancy Huntsman, a

psychologist; Jim [last name intentionally deleted], the foster parent; and Attorney Sarah

Heffter, the guardian ad litem.  Also present were appellant and the children's mother,

7

both represented by counsel. Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact to decide. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

{¶21} We first analyze whether the trial court's conclusions with regard to the factors enumerated in R.C. 2151.414(D)(1) are supported by competent and credible evidence, thus allowing the trial court to make its determination by clear and convincing evidence.

{¶22} The record contains evidence that illustrates the interaction and interrelationship of the children with the children's parents and foster parents. R.C. 2151.414(D)(1)(a). The trial court found, and the record supports the finding, that the twins have bonded with their foster parents and are thriving in that environment. Ms. Michelle Warren, the GCJFS caseworker, testified that she would like to see appellant more involved during the visits and more nurturing toward the children. Ms. Warren noted that, despite appellant's awareness that one of the twins has a breathing condition, she observed appellant smoking cigarettes while the twins were in the car. She also testified that when one of the twins hit his head, appellant remained in the kitchen instead of checking on the child. Conversely, Ms. Warren noted that appellant did read to the children and that the children recognize appellant. The guardian ad litem, Sarah Heffter, expressed that the situation has not only failed to improve since the last permanent custody hearing, but it has regressed. R.C. 2151.414(D)(1)(b).

8

**{¶23}** Moreover, there is the matter of the custodial history of the twins, as well as their need for a legally-secure, permanent placement, and whether that type of placement could be achieved without a grant of permanent custody to the county. R.C. 2151.414(D)(1)(c)-(d). The twins have been in foster care for most of their lives. They were placed in foster care when appellant left the home, as he had been required to supervise his wife while she was with the children. He was never to leave her alone with them. When GCJFS obtained temporary custody, a case plan went into effect with the goal of reunification. A case plan was established that addressed his wife's mental health and required appellant to support his wife. During the pendency of this case, appellant's wife was diagnosed with schizophrenia and began receiving bi-weekly injections of anti-psychotic medication. The trial court noted that the length of temporary custody by GCJFS was necessary to address his wife's illness.

**{¶24}** Noting that appellant does not have any relatives or other potential placements for the children, the trial court addressed whether appellant could provide a legally secure placement for the twins. The trial court recognized that the possibility of future removal of the twins does not support termination and, therefore, focused on the present and ongoing issue of the children's safety. *See In re Williams*, 11th Dist. Geauga Nos. 2003-G-2498 & 2003-G-2499, 2003-Ohio-3550, ¶44. The record demonstrates that there are significant concerns with the twins' safety because of his wife's schizophrenia and appellant's failure to supervise her while with the children. The evidence demonstrates that appellant's wife exhibits lapses in focus and parental judgment, and appellant has continually failed to provide supervision, in contravention to the trial court's protective order.

9

**{¶25}** The record demonstrates that appellant allowed his wife to take the children for a walk unsupervised. Ms. Moore testified that she observed appellant's wife cross the street while pushing the twins in the stroller without looking for oncoming traffic. When questioned, appellant did not comprehend the need for his supervision. Despite being required to do so, appellant repeatedly failed to provide his work schedule so that visitation with the twins could take place. In fact, appellant neither provided the name of an individual that could supervise visitation nor did he provide any plan for the twins' care when he was out of the home. There was also testimony that appellant slept through some of the visitations despite being ordered to supervise his wife with the children.

**{¶26}** The trial court further assessed the factors set forth in R.C. 2151.414(E)(7)–(11). The trial court noted that although appellant has two children that have been removed from his care, he has never had his parental rights involuntarily terminated. Therefore, none of the factors enumerated in R.C. 2151.414(E)(7)-(11) were applicable to appellant.

**{¶27}** We hold that the competent, credible evidence at the permanent custody hearing clearly and convincingly supports the trial court's determination that it is in the best interest of the minor children to be permanently placed in the custody of GCJFS.

**{¶28}** Next, we analyze whether the trial court's finding that the present case exhibits the four factors enumerated in R.C. 2151.414(D)(2) was supported by competent, credible evidence to meet the required standard. As noted above, section (D)(2)(a) indicates the trial court must find, by clear and convincing evidence, "that one or more of the factors in division (E) of this section exist and the child cannot be placed

10

with one of the child's parents within a reasonable time or should not be placed with either parent." The trial court found, and the record supports a finding by clear and convincing evidence, that appellant has continuously failed to substantially remedy the conditions causing the child to be placed outside appellant's home and chronic mental illness that is so severe it makes the parent unable to provide an adequate permanent home for the child. R.C. 2151.414(E)(1)-(2).

{¶29} Ms. Warren testified that appellant did not utilize the many forms of support offered. For instance, when confronted with an issue regarding the lack of an individual to supervise appellant with visitation, Ms. Warren set-up a "care.com" account to explore candidates to provide supervision during visits with the children. Appellant was required to finish this process, but he failed to do so.

{¶30} The trial court recognized that a mental health condition, alone, did not make the children's mother an "unsuitable" parent. Instead, the trial court found the absence of an adequate home because of the mental health condition and appellant's failure to comply with the supervision order at all times. The testimony presented at the hearing supports the trial court's finding that appellant's wife still suffers from lapses that would impair her ability to attend to the twins. The record demonstrates that there is a concern for the twins' well-being and that appellant's wife would need to be supervised while with the children. Appellant, however, is unable to supervise the twins due to his work schedule, and there is a lack of individuals whom could provide such supervision. Furthermore, appellant has continuously failed to provide the court-ordered supervision and to appreciate the need for this supervision. The court further found that appellant failed to remedy that concern despite ample opportunity to do so. Without proper

11

supervision, the safety of the twins would be compromised. The record supports the trial court's finding that "the requisite supervision necessary to protect the children if reunified with their parents is non-existent at this time and with respect to the foreseeable future."

{¶31} The record further establishes that the twins have also been in the custody of GCJFS for more than two years. R.C. 2151.414(D)(2)(b). Moreover, the twins do not meet the requirements for a planned permanent living arrangement ("PPLA"). In *In re A.B.,* 110 Ohio St.3d 230 (2006), the Ohio Supreme Court held that unless the children services agency moves for a PPLA placement of the child, pursuant to R.C. 2151.353(A)(5), the trial court lacks authority to consider such a dispositional option. In this case, there is no indication the agency sought a PPLA as an alternative to permanent custody. Accordingly, placement into a PPLA was not a viable dispositional order in this case. Further, no motions for legal custody of the twins have been filed with the trial court by anyone other than appellant and GCJFS. *See* R.C. 2151.414(D)(2)(d).

{¶32} We find that the competent, credible evidence at the permanent custody hearing supports the trial court's determination, where required by clear and convincing evidence and otherwise, that the factors enumerated in R.C. 2151.414(D)(2) exist. Therefore, the determination of the trial court that permanent custody is in the best interest of the children and that the minor children are to be permanently placed in the custody of GCJFS should be affirmed.

{¶33} Appellant's second assignment of error is without merit.

**{¶34}** Based on the opinion of this court, the judgment of the Geauga County Court of Common Pleas, Juvenile Division, is hereby affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

**{¶35}** The difficulties associated with mental illness are complicated by the challenges of parenting two small children. The difficulties of being a parent and the spouse of a person with mental illness are challenging even on the best of days. The mother's and father's inability to follow a case plan and a safety plan which would keep these children safe is the primary reason in the record for the granting of permanent custody. I understand the arguments raised by the parents in this matter: if intensive community support were available they may have had the ability to successfully parent these children and keep them safe. Sadly, the statute as written by the legislature does not require such efforts by the community.

**{¶36}** Reluctantly, I must concur.