[Cite as *In re M.G.*, 2014-Ohio-974.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

IN THE MATTER OF: M.G. AND B.G., :     **O P I N I O N**
DEPENDENT CHILDREN.

:     **CASE NO. 2013-G-3162**

Civil Appeal from the Geauga County Court of Common Pleas, Juvenile Division. Case No. 11 JF 000046.

Judgment: Affirmed.

*Brian A. Smith*, 503 West Park Avenue, Barberton, OH 44203 (For Appellant Katherine Grover).

*James R. Flaiz*, Geauga County Prosecutor, and *Craig A. Swenson*, Assistant Prosecutor, Courthouse Annex, 231 Main Street, Chardon, OH 44024 (For Appellee Geauga County Job and Family Services).

*Sarah L. Heffter*, 401 South Street, Suite 2-B, Chardon, OH 44024 (Guardian ad litem).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Katherine Grover, appeals the judgment of the Geauga County Court of Common Pleas, Juvenile Division, terminating her parental rights concerning her sons, M.G. and B.G. Upon review of the record, the trial court's conclusions concerning the best interest of the minor children are supported by competent, credible evidence and, where required, are sufficient to support those findings by clear and convincing evidence. Accordingly, we must affirm the judgment.

{¶2} The Geauga County Department of Job and Family Services ("GCJFS") filed a complaint on January 24, 2011, seeking temporary custody of appellant's two children, M.G. and B.G., born January 21, 2011. The complaint was based on allegations that appellant suffered from schizophrenia and that she was unable to serve as a suitable parent of the twins. The twins remained in their parents' custody, under court supervision, until the trial court granted GCJFS' motion for emergency custody in July 2011. Initially, appellant had to be supervised, primarily by her husband, the father of the children, while caring for the twins. When her husband left the home, B.G. and M.G. were removed and placed in temporary custody of GCJFS on July 14, 2011.

{¶3} GCJFS implemented a case plan with the goal of reunification. GCJFS first filed a motion for permanent custody on September 16, 2011. After hearings, the trial court denied the motion. GCJFS filed a second motion for permanent custody on August 13, 2012. Again, after a hearing, the trial court denied the motion for permanent custody. In doing so, the trial court issued "protective orders" for appellant, as follows:

> Mother is ordered (1) to continue with and maintain her injection medications as prescribed by her treating physician for as long as so prescribed; and (2) to continue with her counseling and follow the recommendations of her counselor.

> The Court further orders that mother shall be required to have supervision or childcare assistance when alone with the children until further written order of the Court.

{¶4} On January 24, 2013, GCJFS filed a third motion for permanent custody. In that motion, GCJFS noted that its temporary custody of the twins would typically terminate effective January 24, 2013, because that "would be two years from the date the complaint was filed in this case." GCJFS also stated it was seeking permanent custody of the twins because the concerns that led to their removal from their parents'

2

custody still remain.  On September 25, 2013, following a hearing, the trial court granted GCJFS' motion for permanent custody.

{¶5}    Appellant filed a timely notice of appeal.

{¶6}    Appellant's first assignment of error states:

{¶7}    "The Trial Court erred in finding that a grant of permanent custody was in the best interest of M.G. and B.G. and was not supported by Clear and Convincing Evidence as against the manifest weight of the evidence."

{¶8}    We recognize that the termination of parental rights is "the family law equivalent of the death penalty." *In re Phillips*, 11th Dist. No. 2005-A-0020, 2005-Ohio-3774, ¶22, citing *In re Hoffman*, 97 Ohio St.3d 92, 95 (2002).  This court has stated that a parent is entitled to "fundamentally fair procedures in accordance with the due process provisions under the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution." *In re Sheffey*, 167 Ohio App.3d 141, 147 (11th Dist.2006).

{¶9}    R.C. 2151.414 provides the two-pronged analysis a trial court must follow in permanent custody proceedings.  Pursuant to R.C. 2151.414(B)(1), a trial court may grant permanent custody if the court determines at the permanent custody hearing—by clear and convincing evidence—that it is in the best interest of the child to grant permanent custody to the agency and that any of the following apply:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was

3

previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶10} Appellant does not dispute the applicability of subsection (d) in this case: both M.G. and B.G have been in the temporary custody of GCDJFS for at least 12 months of a consecutive 22-month period. In fact, the record indicates that M.G. and B.G. had been in the custody of GCJFS for over 18 months at the time GCJFS filed its third motion for permanent custody.

{¶11} Having determined that one of the four factors in R.C. 2151.414(B)(1)(a)-(d) apply, the trial court must next decide, by clear and convincing evidence, whether the award of permanent custody to an agency is in the child's best interest based upon a non-exclusive list of relevant factors set forth in R.C. 2151.414(D)(1):

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

4

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶12} "Clear and convincing evidence is more than a mere preponderance of the evidence; instead, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Aiken*, 11th Dist. Lake No. 2005-L-094, 2005-Ohio-6146, ¶28.

{¶13} In addition, R.C. 2151.414(D)(2) states, "[i]f all of the following apply, permanent custody is in the best interest of the child and the court shall commit the child to the permanent custody of a public children services agency or private child placing agency:

(a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.

5

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

{¶14} In its judgment entry, the trial court examined both of the aforementioned "best interest" prongs—R.C. 2151.414(D)(1) and R.C. 2151.414(D)(2). The civil manifest weight of the evidence standard is applied in appellate review of cases involving the termination of parental rights: "if the trial court's grant of permanent custody to the county is supported by some competent, credible evidence, we must affirm the court's decision." *In re J.H.*, 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶91. However, this must be stated in relation to the trial court's standard, as we must determine if there is competent, credible evidence in the record that would allow the trial court to have made its determinations by clear and convincing evidence.

{¶15} '[I]nherent within R.C. 2151.414(B)(1)(d) rests the finding that the parent is unable, unsuitable, or unfit to care for the child. If the child has been placed in a children services agency's temporary custody for at least twelve months of the prior twenty-two months, some reason must exist why the child has not been in the parent's care. The reason normally would be because the parent has been unable to demonstrate that the parent is able, suitable, or fit to care for the child.'

*In re A.J. and S.M.*, 11th Dist. Trumbull No. 2010-T-0041, 2010-Ohio-4553, ¶42, quoting *In re Workman*, 4th Dist. Vinton No. 02CA574, 2003-Ohio-2220, ¶39. In effect, if a parent has failed to achieve reunification within 12 months of a 22-month period, a justifiable presumption of parental unfitness arises. *See In re A.J. and S.M.* at ¶43.

{¶16} On appeal, appellant argues the trial court's decision to grant GCJFS's motion for permanent custody was based upon insufficient evidence. In her appellate

6

brief, appellant frequently cites to testimony that occurred at the hearings relating to GCJFS's two previous motions for permanent custody, which were denied by the trial court. The order that is the subject of the instant appeal, however, addresses only the testimony and evidence presented at the hearing on the third motion for permanent custody. The evidence and testimony from the two prior hearings is relevant only with respect to whether the circumstances have or have not changed from the time those hearings occurred.

{¶17} Notably, the trial court recognized in its judgment entry that "there is no question that [appellant] has an intense desire to protect her twins. The issue in this case is not [appellant's] willingness to parent, but rather her ability to do so safely in light of her schizophrenia." The trial court repeatedly emphasized that appellant cares deeply for the twins and will try to do anything for her children, but placement of the children in appellant's home "would not be in the best interest of the children because of the safety concerns arising from her mental health condition and lapses in focus and judgment." The trial court found that appellant had not rebutted the presumption of parental unfitness.

{¶18} At the hearing on the third motion for permanent custody, the trial court heard testimony from Michelle Warren, a GCJFS social worker; Jennifer Moore-Mallinos, an early childhood mental health consultant with Catholic Charities; Darlene Grover, the paternal grandmother of the twins; Susan Whittaker, a psychiatric nurse practitioner with Beacon Health; Steve Roos, a therapist with Beacon Health; Dr. Nancy Huntsman, a psychologist; Jim [last name intentionally deleted], the foster parent; and Attorney Sarah Heffter, the guardian ad litem. Also present were appellant and the

7

children's father, both represented by counsel. Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact to decide. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

{¶19} We first analyze whether the trial court's conclusions with regard to the factors enumerated in R.C. 2151.414(D)(1) are supported by competent and credible evidence, thus allowing the trial court to make its determination by clear and convincing evidence.

{¶20} The record contains evidence that illustrates the interaction and interrelationship of the children with the children's parents and foster parents. R.C. 2151.414(D)(1)(a). The trial court found, and the record supports, that the twins have bonded with their foster parents and are thriving in that environment. Ms. Michelle Warren, the GCJFS caseworker, testified that appellant is active during her visits with the twins and that the twins recognize appellant. There is, however, evidence that the twins sometimes regress after their visits with appellant. Furthermore, Jennifer Moore-Mallinos, the court-appointed parent monitor, expressed concern about appellant's ability to set boundaries, stating that appellant indicated she does not like to tell the twins, "no."

{¶21} Additionally, the guardian ad litem, Sarah Heffter, expressed that the situation has not only failed to improve since the last permanent custody hearing, but it has regressed. R.C. 2151.414(D)(1)(b). Attorney Heffter noted she would be "very

8

concerned" for the twins' safety if they were returned to appellant. She noted that, in her observation, appellant was lethargic and unable to respond quickly to stimuli.

{¶22} Moreover, there is the matter of the custodial history of the twins, as well as their need for a legally-secure, permanent placement, and whether that type of placement could be achieved without a grant of permanent custody to the county. R.C. 2151.414(D)(1)(c)-(d). The twins have been in foster care for most of their lives. They were placed in foster care when appellant's husband left the home, as appellant was to be supervised while with her children at all times. When GCJFS obtained temporary custody, a case plan went into effect with the goal of reunification. A case plan was established that addressed appellant's mental health with the support of her husband. During the pendency of this case, appellant was diagnosed with schizophrenia and began receiving bi-weekly injections of anti-psychotic medication. The trial court noted that the length of temporary custody by GCJFS was necessary to address appellant's illness.

{¶23} Noting that appellant does not have any relatives or other potential placements for the children, the trial court addressed whether appellant could provide a legally secure placement for the twins. The trial court recognized that the possibility of future removal of the twins does not support termination and, therefore, focused on the present and ongoing issue of the children's safety. *See In re Williams*, 11th Dist. Geauga Nos. 2003-G-2498 & 2003-G-2499, 2003-Ohio-3550, ¶44. The record demonstrates that there are significant concerns with the twins' safety because of appellant's schizophrenia and her husband's failure to supervise her while with the children. Appellant exhibits lapses in focus and parental judgment. For example, Ms.

9

Moore testified that she observed appellant cross the street while pushing the twins in the stroller without looking for oncoming traffic. Dr. Nancy Huntsman, a psychologist appointed by the trial court, testified regarding whether appellant was mentally competent and capable to raise her twins without daily supervision. Dr. Huntsman opined that these lapses in judgment exhibited by appellant caused significant concerns that appellant would not be able to attend to the twins' safety. The trial court found, and the record supports such finding, that "placing the children in an ongoing 'at risk' environment is not in the children's best interest."

{¶24} The trial court further assessed the factors set forth in R.C. 2151.414(E)(7)-(11). The trial court noted that although appellant has three other children that have been removed from her care, she has never had her parental rights involuntarily terminated. Therefore, none of the factors enumerated in R.C. 2151.414(E)(7)-(11) were applicable to appellant.

{¶25} We hold that the competent, credible evidence at the permanent custody hearing clearly and convincingly supports the trial court's finding that it is in the best interest of the minor children to be permanently placed in the custody of GCJFS.

{¶26} Next, we analyze whether the trial court's finding that the present case exhibits the four factors enumerated in R.C. 2151.414(D)(2) was supported by competent, credible evidence to meet the required standard. As noted above, section (D)(2)(a) indicates the trial court must find, by clear and convincing evidence, "that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent." The trial court found, and the record supports a finding by clear and

10

convincing evidence, that appellant has continuously failed to substantially remedy the conditions causing the children to be placed outside appellant's home and that appellant's chronic mental illness is so severe that it makes her unable to provide an adequate permanent home for the children.  R.C. 2151.414(E)(1)-(2).

{¶27}  Ms. Warren testified that appellant did not utilize the many forms of support offered.  For instance, when confronted with an issue regarding the lack of an individual to supervise appellant with her visitation, Ms. Warren set-up a "care.com" account to explore candidates to provide supervision during visits with the children.  Appellant was required to finish this process, but she failed to do so.

{¶28}  The trial court recognized that appellant's mental health condition, alone, does not make her an "unsuitable" parent.  Instead, the trial court was required to find that appellant cannot provide an adequate home because of her mental health condition.  The testimony presented at the hearing supports the trial court's finding that although appellant is receiving active treatment, she still suffers from lapses that would impair her ability to attend to the twins.  The record demonstrates that, if the twins were reunified with their parents, they would not be supervised while in appellant's care.  Without this supervision, the safety of the twins would be compromised.  Dr. Huntsman, the court-appointed psychologist, opined, "with reasonable psychological certainty, that [appellant] lacks the mental competency and capacity to parent her boys adequately."

{¶29}  The record further establishes that the twins have also been in the custody of GCJFS for more than two years.  R.C. 2151.414(D)(2)(b).  Moreover, the twins do not meet the requirements for a planned permanent living arrangement ("PPLA").  In *In re A.B.*, 110 Ohio St.3d 230 (2006), the Ohio Supreme Court held that unless the children

services agency moves for a PPLA placement of the child, pursuant to R.C. 2151.353(A)(5), the trial court lacks authority to consider such a dispositional option. In this case, there is no indication the agency sought a PPLA as an alternative to permanent custody. Accordingly, placement into a PPLA was not a viable dispositional order in this case. Further, no motions for legal custody of the twins have been filed with the trial court by anyone other than appellant and GCJFS. *See* R.C. 2151.414(D)(2)(d).

{¶30} We find that the competent, credible evidence at the permanent custody hearing supports the trial court's determination that the factors enumerated in R.C. 2151.414(D)(2) exist and, where necessary, supports the finding by clear and convincing evidence. Therefore, permanent custody is in the best interest of the children, and the court's order committing the minor children to be permanently placed in the custody of GCJFS should be affirmed.

{¶31} Appellant's first assignment of error is without merit.

{¶32} Appellant's second assignment of error alleges:

{¶33} "The trial court failed to sign the Nunc Pro Tunc Judgment Entry dated September 25, 2013, as required by Civil Rule 58(A)."

{¶34} Appellant argues the trial court failed to sign the judgment entry dated September 25, 2013, as required by Civ.R. 58(A). A review of such judgment entry indicates that it is, in fact, signed by the trial court. Consequently, appellant's second assignment of error is without merit.

{¶35} Based on the opinion of this court, the judgment of the Geauga County Court of Common Pleas, Juvenile Division, is hereby affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

{¶36} The difficulties associated with mental illness are complicated by the challenges of parenting two small children. The difficulties of being a parent and the spouse of a person with mental illness are challenging even on the best of days. The mother's and father's inability to follow a case plan and a safety plan which would keep these children safe is the primary reason in the record for the granting of permanent custody. I understand the arguments raised by the parents in this matter: if intensive community support were available they may have had the ability to successfully parent these children and keep them safe. Sadly, the statute as written by the legislature does not require such efforts by the community.

{¶37} Reluctantly, I must concur.